**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3173-22

TIMOTHY BURKHARD,

     Plaintiff-Appellant,

v.

CITY OF PLAINFIELD and
DEPUTY CHIEF PIETRO
MARTINO,

     Defendants-Respondents.

_____

> Argued September 16, 2024 – Decided November 1, 2024
>
> Before Judges Sumners, Susswein and Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2356-20.
>
> Sebastian Ben Ionno II argued the cause for appellant (Aiello, Harris, Abate Law Group, PC, attorneys; Sebastian Ben Ionno II, Robert D. Novicke, Jr., and Debra Rebecca Higbee, on the briefs).
>
> Matthew R. Tavares argued the cause for respondent (Rainone, Coughlin & Michello, LLC, attorneys; Matthew R. Tavares, of counsel and on the brief).

PER CURIAM

Plaintiff Timothy Burkhard appeals the May 19, 2023 Law Division order dismissing his hostile work environment complaint against defendant the City of Plainfield. Defendant hired plaintiff as a firefighter. In March 2020, a deputy chief of the fire department, co-defendant Pietro Martino,[1] taught a training course on COVID-19. Martino mocked plaintiff, who is of Asian descent, for falling asleep during class, asking plaintiff if he "just got back from Wuhan" – referring to the city in China then associated with the global pandemic – while squinting his eyes in an offensive fashion to mimic the facial characteristics of some Asian persons. Plaintiff filed suit under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Following discovery, the trial court initially denied defendants' motion for summary judgment but on motion for reconsideration, determined the City had established the affirmative defense recognized in Aguas v. State, 220 N.J. 494 (2015) and Dunkley v. S. Coraluzzo Petroleum Transporters, 437 N.J. Super. 366 (App. Div. 2014), certif. granted, cause remanded on alternative grounds, 221 N.J. 217 (2015), and aff'd, 441 N.J. Super. 322 (App. Div. 2015), based on its anti-discrimination policy and its

[1] Plaintiff does not appeal the March 13, 2023 order dismissing his claim against Martino.

response to this isolated instance of discriminatory conduct. After carefully reviewing the record in light of the parties' arguments and governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. On March 13, 2020, plaintiff and the other firefighters on his shift attended a COVID-19 training program Martino presented. Plaintiff dozed off during the training. Martino approached plaintiff, squinted his eyes to parody stereotypical Asian facial features, and asked plaintiff if he had just returned from Wuhan. Nineteen firefighters, including a battalion chief and five lieutenants, witnessed the incident.

Plaintiff alerted his union president and vice president sometime before his next shift, which occurred four days after the training incident. The union officials spoke with Fire Director Kenneth Childress who requested that plaintiff submit a letter describing the incident. Plaintiff submitted the requested letter to Childress on March 17, 2020. Three days later, plaintiff met with Childress who advised him that the complaint would be forwarded to human resources.

Plaintiff's battalion chief subsequently advised plaintiff he would not have to participate in any future training that Martino was presenting. The battalion

3

chief then launched an investigation, during which Martino admitted to making the squinting eye gesture.

On April 6, 2020, plaintiff met with Childress, union representatives, and Deputy Chief of Operations Joseph Franklin. During that meeting, plaintiff was informed that Martino would be disciplined. Martino went on terminal leave in advance of his impending retirement. He was never served with the letter of reprimand that had been prepared.

On July 23, 2020, defendant filed a LAD complaint against the City and Martino. Following the conclusion of discovery, defendant moved for summary judgment, arguing: (1) there was no genuine issue as to any material fact; (2) plaintiff failed to set forth a prima facie case because plaintiff failed to show his race motivated Martino's conduct and that conduct was severe or pervasive; (3) plaintiff's claims should be dismissed because defendant took immediate action pursuant to its anti-harassment and anti-discrimination policies; and (4) plaintiff was not entitled to compensatory or punitive damages.

The trial court denied defendant's motion for summary judgment, finding that material facts were in dispute, including whether Martino's comment was made based on plaintiff's race and whether this one-time incident constitutes severe and pervasive discrimination. Defendant moved for reconsideration,

A-3173-22

arguing the trial court failed to consider whether the City's anti-discrimination policy established an affirmative defense.

After hearing oral argument, the trial court granted defendant's motion for reconsideration and reversed its previous decision. The trial court reiterated material facts as to whether plaintiff was subjected to a hostile work environment in violation of the LAD were still in dispute. On reconsideration, however, the trial court determined defendant had an effective anti-discrimination policy and enforced that policy promptly. On that basis, the trial court granted summary judgment dismissal.

This appeal followed. Plaintiff contends the trial court erred in granting reconsideration because defendant's policies were not effective in stopping the discrimination and were not enforced promptly as Martino was never formally reprimanded for his discriminatory conduct.

II.

We preface our analysis by acknowledging the legal principles governing this appeal. We review a trial court's grant or denial of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

5

that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  "To decide whether a genuine issue of material fact exists, the trial court must 'draw[ ] all legitimate inferences from the facts in favor of the non-moving party.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alterations in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  The key inquiry is whether the evidence presented, when viewed in the light most favorable to the non-moving party, "[is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Brill further instructs that if the evidence in the record is "so one-sided that one party must prevail as a matter of law . . . the trial court should not hesitate to grant summary judgment."  Ibid. (citation omitted).

Turning to substantive legal principles, our review of a hostile work environment claim requires consideration of "the totality of the circumstances." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 178 (App. Div. 2005). To establish a claim of hostile work environment discrimination under the LAD, a plaintiff "must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive

enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Griffin v. City of E. Orange, 225 N.J. 400, 413-14 (2016) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)).

In Taylor v. Metzger, our Supreme Court acknowledged that "one incident of harassing conduct can create a hostile work environment." 152 N.J. 490, 499 (1998). However, the Court emphasized that, although it

> "is certainly possible" that a single incident, if severe enough, can establish a prima facie case of a hostile work environment, "it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable [person situated as the claimant], make the working environment hostile."
>
> [Id. at 500 (quoting Lehmann, 132 N.J. at 606-07).]

In Aguas, the Court provided further guidance on the proofs needed to bring a hostile workplace action against an employer under the LAD.[2] 220 N.J. 494. The plaintiff in Aguas asserted two LAD claims against her employer, the

---

[2] The alleged hostile work environment in Aguas was created by sexual harassment, not racial discrimination. In Dunkley v. S. Coraluzzo Petroleum Transporters, we noted that "the [Aguas] Court's analysis of an employer's vicarious liability is not limited solely to sexual harassment LAD claims. Rather, the principles can be tailored and adopted to address allegations of other discriminatory conduct." 441 N.J. Super. 322, 330 (App. Div. 2015).

A-3173-22

State of New Jersey, alleging her supervisors created a hostile work environment by subjecting her to sexual harassment. Id. at 505-06. Those claims included a direct claim for negligence and a vicarious liability claim for supervisory sexual harassment. Id. at 506. The trial court found the plaintiff presented a prima facie hostile work environment claim, but granted the State's motion for summary judgment because the State established an affirmative defense by showing an effective anti-harassment and discrimination policy was in place. Ibid.

The Supreme Court held our "jurisprudence strongly supports the availability of an affirmative defense, based on the employer's creation and enforcement of an effective policy against sexual harassment." Id. at 514-17. The Court embraced the Ellerth/Faragher[3] test for defending claims alleging vicarious liability for supervisory harassment. Id. at 521. It allowed employers to assert as an affirmative defense that they adopted and enforced an effective policy against sexual harassment, so long as the employee suffered no tangible employment action.[4] Id. at 523-24. The Court stressed, "'[t]he efficacy of an

---

[3] Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998).

[4] Plaintiff in this matter does not claim that he suffered a tangible employment action.

employer's remedial program is highly pertinent to an employer's defense'" against vicarious liability under the LAD. Id. at 513 (quoting Gaines v. Bellino, 173 N.J. 301, 314 (2002)).

The Aguas majority further explained that to defend against a hostile workplace allegation, an employer may prove:

> [T]he existence of: (1) formal policies prohibiting harassment in the workplace; (2) complaint structures for employees' use, both formal and informal in nature; (3) anti-harassment training, which must be mandatory for supervisors and managers, and must be available to all employees of the organization; (4) the existence of effective sensing or monitoring mechanisms to check the trustworthiness of the policies and complaint structures; and (5) an unequivocal commitment from the highest levels of the employer that harassment would not be tolerated, and demonstration of that policy commitment by consistent practice.
>
> [Ibid. (quoting Gaines, 173 N.J. at 313).]

In Dunkley, we added, "[a]n employer is not required to meet each and every one of these factors. Rather, it is a balance of facts and circumstances to determine whether the employer shows 'the existence of effective preventative mechanisms,' designed to comply with the LAD's defined purpose 'to root out the cancer of discrimination.'" 441 N.J. Super. at 331 (quoting first Gaines, 173 N.J. at 313, and then Cicchetti v. Morris Cnty. Sheriff's Off., 194 N.J. 563, 588 (2008)).

Our decision in Dunkley provides helpful guidance in addressing the affirmative defense raised in the matter before us. In Dunkley, we held that "[g]ranting all reasonable inferences to plaintiff's evidence, we reject the suggestion Gaines, as adopted by Aguas, requires the jury to assess the degree of effectiveness of defendant's response to plaintiff's complaints when the discriminatory conduct admittedly was addressed and rectified. Aguas emphasized the LAD does not impose 'strict liability.'" Id. at 333-34 (citing Aguas, 220 N.J. at 510-11).

Relatedly, we also "disagree[d] the jury may assess or even consider whether an employer's decision not to terminate an offending employee denotes the discrimination policy as ineffective." Id. at 334. We concluded:

> In summary, defendant, as plaintiff's employer, acted expeditiously and effectively to prevent further racial discrimination. No prior instances of racial slurs or harassment were known and when plaintiff's complaint surfaced, it was immediately addressed. "More important, plaintiff's own report [was] he did not experience any further discriminatory harassment and suffered no change in his position, duties or compensation . . . ." [Dunkley, 437 N.J. Super.] at 381-82, 98.
>
> We decline plaintiff's invitation to allow a jury to evaluate its view of whether defendant's policy could be more effective or to assess defendant's decision not to fire the offending employee. It is neither the role of the jury nor the work of courts to intrude so deeply into

10

an employer's operational decisions. Plaintiff never saw [the offending supervisor] again, which might suggest he was transferred to a different site. Plaintiff's own words demonstrate defendant's policy, as implemented, worked and he completed his training without encountering further derogatory or discriminatory treatment. The legislative objective of the LAD is to assure a commitment to end discrimination in the workplace. See Fuchilla v. Layman, 109 N.J. 319, 334 (1988). The facts here show that was accomplished.

[Id. at 335-36.].

## III.

Applying the rationale in Aguas and Dunkley to the present facts, we conclude no genuine dispute of material fact exists and defendant established the affirmative defense for purposes of summary judgment resolution of plaintiff's LAD claim. Defendant promptly investigated the incident and determined that Martino's conduct was inappropriate and deserving of discipline.

Plaintiff's argument that the City's anti-discrimination policy was ineffective because other firefighters attending the training program did not report the discriminatory conduct does not persuade us. Nor does plaintiff's contention that the affirmative defense was not established because the reprimand letter was never served on Martino. The record shows Martino was

11

on terminal leave and did not return to duty. The failure to transmit the reprimand letter to an employee who was already on terminal leave does not alter the fact that defendant promptly determined Martino's conduct was inappropriate and deserving of discipline. Because Martino was no longer an active member of the force, it is reasonable to assume Martino would have no further contact with plaintiff at the workplace.

Importantly, the record clearly shows plaintiff was not subjected to discrimination before or after the COVID-19 training incident. As we indicated in note four, supra, plaintiff did not suffer any tangible change in his position, duties, or compensation. Indeed, the record shows the fire department supported him. In these circumstances, we do not believe that the failure to deliver the written reprimand renders defendant's overall response ineffective for purposes of the affirmative defense. Cf. Dunkley, 441 N.J. Super. at 334.

Articulated another way, issuing the reprimand letter to an employee already on terminal leave awaiting retirement was not needed to ensure that employee would not commit another discriminatory act in the workplace. Furthermore, the failure to transmit the reprimand letter in these circumstances does not signal that defendant would tolerate future workplace discrimination or otherwise fail to enforce its anti-harassment and discrimination policy.

12

In sum, on de novo review, we conclude plaintiff failed to raise a material fact disputing the offensive conduct that gave rise to plaintiff's complaint was promptly and effectively addressed. After reviewing the evidence in the light most favorable to plaintiff, <u>Brill</u>, 142 N.J. at 540, we are satisfied the evidence relevant to the affirmative defense is so one-sided that defendant must prevail as a matter of law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3173-22