SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### Tonique Griffin v. City of East Orange (A-32-14) (074937)

**Argued December 2, 2015 -- Decided June 22, 2016**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court addresses whether the trial court erred in barring the testimony of a witness who claimed that her superiors directed her to lie to the person investigating sexual harassment claims.

In October 2009, plaintiffs Tonique Griffin, Virginia Best, and Rosalyn Walker, employees of the City of East Orange (City), each filed internal reports alleging that they were sexually harassed by Obed Prinvil, a supervisor.  The City Council retained an outside attorney, Dina Mastellone, to conduct an independent investigation.  Mastellone interviewed plaintiffs, Prinvil, and other City employees, including Corletta Hicks, a personal friend of Griffin and an aide to the City's then-Mayor, Robert Bowser (Mayor Bowser).  Hicks, who had no personal knowledge of any of the alleged incidents, informed Mastellone that Griffin and Best "have always been a mess," and that Griffin had a relationship with Prinvil and filed her complaint in an effort to "take money from the City."  Hicks also portrayed Prinvil as a "phenomenal" and cautious director, who always acted professionally.  Mastellone concluded that none of the three complainants had been sexually harassed or subjected to a hostile work environment based on their gender.

Plaintiffs sued the City, and others, under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, alleging hostile work environment sexual harassment, quid pro quo sexual harassment, and retaliation.  The City asserted that it took reasonable care to promptly correct any harassing behavior and that it implemented, applied, and disseminated effective anti-harassment policies and procedures.  Subsequently, Hicks filed a separate, unrelated complaint against the City with the federal Equal Employment Opportunity Commission (EEOC), and a later LAD action against the City, Mayor Bowser, and another individual.

During Hicks's deposition in plaintiffs' case, she admitted that Mayor Bowser had instructed her to undermine Griffin's credibility and build up Prinvil's character in her interview with Mastellone.  Plaintiffs consented to the City's request that Hicks be barred from testifying about her EEOC complaint and lawsuit against the City and Mayor Bowser, but the City subsequently asserted that plaintiffs should not be permitted to discuss Hicks's allegation that Mayor Bowser had corrupted the investigation because that allegation also was connected to her separate litigation.  The trial court agreed, ruling that the evidence would not be relevant to any issue other than plaintiffs' claims for punitive damages and barring plaintiffs from presenting Hicks's testimony on any subject.

At trial, the City substantially relied on Mastellone's investigation.  At the close of evidence, the trial court granted the City's motion for a directed verdict as to the quid pro quo sexual harassment claim and plaintiffs' punitive damages claim.  The remaining issues were submitted to the jury, which returned a verdict of no cause as to all claims.  Judgment was entered in favor of the City.

Plaintiffs appealed, and the Appellate Division affirmed the trial court's evidentiary determinations, including its decision to bar Hicks's testimony.  The panel agreed with the trial court that Hicks's testimony was not relevant because she did not work in the same department as Prinvil and two of the plaintiffs.  It further ruled that, even if her testimony were relevant, it would have been unduly prejudicial.  The Court granted certification, limited to the question of "whether the trial court erred in barring the testimony of a witness who claimed that her superiors directed her to lie to the person investigating plaintiffs' claims of sexual harassment."  220 N.J. 265 (2015).

**HELD:**  The trial court erred when it barred the testimony of a witness who claimed that her superiors instructed her to lie to the person investigating sexual harassment claims because the testimony was relevant to plaintiffs' claims for compensatory and punitive damages arising from hostile work environment sexual harassment, satisfied an exception to the hearsay rule, and its relevance was not substantially outweighed by the risk of undue prejudice.

1.  A trial court's evidentiary determinations are entitled to deference and are reviewed for an abuse of discretion.  The Court's analysis of the trial court's evidentiary ruling begins with the question of whether the excluded evidence

1

was relevant under N.J.R.E. 401, and requires analysis of the connection between the statements that Hicks attributed to Mayor Bowser and plaintiffs' claims for compensatory and punitive damages arising from alleged hostile work environment sexual harassment. (pp. 14-17)

2. Here, plaintiffs asserted two distinct theories of employer liability for hostile work environment sexual harassment, first claiming that the City was directly liable for negligence, an analysis of which requires consideration of whether City officials made a commitment that sexual harassment would not be tolerated and took concrete steps to eradicate it. Plaintiffs' second claim, that the City is vicariously liable for Prinvil's alleged conduct, similarly hinges on the conduct and attitude of the City's senior management. As an affirmative defense to plaintiffs' claim of vicarious liability, the City relied on its implementation of effective anti-harassment policies and procedures, arguing that it took reasonable steps to prevent sexual harassment and to respond to plaintiffs' allegations and emphasizing Mayor Bowser's leadership in its anti-discrimination initiatives. Like the hostile work environment sexual harassment claims, plaintiffs' claims for punitive damages also compelled an assessment of the manner in which the City's upper management addressed the alleged conduct. (pp. 17-21)

3. Although Hicks did not witness the incidents alleged in plaintiffs' claims, her testimony directly related to the attitude of the City's upper management toward sexual harassment in general, and its response to plaintiffs' allegations in particular. Were the jury to believe Hicks's account of her conversation with Mayor Bowser, it might have concluded that the City's most senior official materially interfered in the independent investigation of plaintiffs' claims. This would have supported plaintiffs' hostile work environment sexual harassment claims under both the direct and vicarious liability theories, undermined the City's affirmative defense, and strengthened plaintiffs' punitive damages claims. Consequently, the proffered evidence is directly relevant to plaintiffs' hostile work environment sexual harassment claims. (pp. 21-23)

4. Since Hicks's proposed testimony about her alleged conversations with Mayor Bowser included out-of-court statements offered to prove the truth of the matter asserted therein, the hearsay rule, N.J.R.E. 801(c), is implicated. Thus, the Court also considers whether the evidence at issue is admissible under N.J.R.E. 803(b), which provides for an exception to the hearsay rule for a statement by a party-opponent. Since Mayor Bowser, a senior official in the City's organizational structure, was the City's agent when he allegedly spoke with Hicks about her interview with Mastellone and the alleged statements directly concerned his responsibilities as Mayor, the hearsay statements in Hicks's proposed testimony fall within the exception and are admissible. (pp. 23-25)

5. Hicks's testimony also is not barred under N.J.R.E. 403, which allows for the exclusion of relevant testimony if its probative value is substantially outweighed by the risk of undue prejudice. Had plaintiffs been permitted to call Hicks as a witness, subject to the City's cross-examination, her testimony about Mayor Bowser could have been accepted as true or rejected as incredible by the jury. Hicks's highly relevant testimony is not inadmissible merely because it could have negatively impacted the defense, and the trial court's decision to bar her testimony was an abuse of discretion. Thus, the Court reverses the Appellate Division's judgment affirming the trial court's dismissal of plaintiffs' claims for compensatory and punitive damages arising from alleged hostile work environment sexual harassment, and remands those claims to the trial court for a new trial. (pp. 25-29)

The judgment of the Appellate Division is **AFFIRMED IN PART** and **REVERSED IN PART**, and the matter is **REMANDED** for further proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER, JUSTICES ALBIN and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICES LaVECCHIA and FERNANDEZ-VINA did not participate.**

2

TONIQUE GRIFFIN,

    Plaintiff-Appellant,

       v.

CITY OF EAST ORANGE,

    Defendant-Respondent,

       and

OBED PRINVIL, ADMINISTRATOR
REGINALD LEWIS, and CLAUDE CRAIG,

    Defendants.

_____

VIRGINIA BEST and ROSALYN WALKER,

    Plaintiffs-Appellants,

       v.

CITY OF EAST ORANGE,

    Defendant-Respondent,

       and

OBED PRINVIL, ADMINISTRATOR
REGINALD LEWIS, and CLAUDE CRAIG,

    Defendants.


       Argued December 2, 2015 – Decided June 22, 2016

       On certification to the Superior Court,
       Appellate Division.

       Charles P. Cohen argued the cause for
       appellants.

Avis Bishop-Thompson argued the cause for respondent (DeCotiis, Fitzpatrick & Cole, attorneys).

Deborah L. Mains submitted a brief in support of amicus curiae New Jersey Association for Justice (Costello & Mains, attorneys).

JUSTICE PATTERSON delivered the opinion of the Court.

This appeal arises from a judgment in favor of the defendant employer in a sexual harassment case. We review the Appellate Division's determination affirming the trial court's decision to bar the testimony of a fact witness.

Plaintiffs Tonique Griffin (Griffin), Virginia Best (Best) and Rosalyn Walker (Walker), employees of the City of East Orange (City), alleged that they were sexually harassed by a supervisor. In the wake of plaintiffs' internal reports of the alleged harassment, the City retained an attorney to conduct an investigation of their claims. Corletta Hicks (Hicks), an aide to the City's then-Mayor, Robert Bowser (Mayor Bowser), and a close friend of Griffin, made statements to the investigator that undermined Griffin's allegations and supported the credibility of the alleged harasser. The investigator relied in part on Hicks's statements in rejecting plaintiffs' contention that, by virtue of the supervisor's harassment, they were subjected to a hostile work environment.

2

Plaintiffs filed complaints under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, alleging hostile work environment sexual harassment, quid pro quo sexual harassment, and retaliation, and seeking compensatory and punitive damages. During discovery, Hicks testified at her deposition that Mayor Bowser spoke with her before she was interviewed by the investigator, directing her to make negative comments about Griffin and to praise the supervisor accused of harassment, and that pursuant to his instructions, she provided the investigator with misleading information.

The trial court barred Hicks from testifying at trial on the ground that her proposed testimony was irrelevant to plaintiffs' claims. The court granted a directed verdict dismissing some of plaintiffs' claims, and the jury rejected the remaining claims. An Appellate Division panel affirmed the trial court's judgment. We granted plaintiffs' petition for certification.

We hold that the trial court erred when it barred plaintiffs from presenting Hicks's testimony to the jury. Mayor Bowser's alleged instructions to Hicks were directly pertinent to plaintiffs' claims for compensatory and punitive damages arising from hostile work environment sexual harassment, and therefore met the relevancy standard of N.J.R.E. 401. The hearsay statements attributed to Mayor Bowser constituted

3

statements by a party's agent or servant offered against the party, and were thus within the exception to the hearsay rule prescribed by N.J.R.E. 803(b)(4). Moreover, N.J.R.E. 403 did not warrant the exclusion of Hicks's testimony, because the probative value of the testimony was not substantially outweighed by the risk of undue prejudice.

We therefore reverse the Appellate Division's judgment affirming the dismissal of plaintiffs' claims for hostile work environment sexual harassment, and remand the matter to the trial court for a new trial on those claims. We affirm the Appellate Division's judgment with respect to plaintiffs' remaining claims.

I.

In 2009, when plaintiffs' allegations arose, Obed Prinvil (Prinvil) was the Director of the City's Property Maintenance Department, working in City Hall. Griffin, a zoning secretary and clerk-typist, was assigned to the Policy Planning and Development Division. However, she was frequently asked to assist with the work of the Property Maintenance Department, and was supervised by Prinvil. Best, a property maintenance complaint investigator, worked in the Property Maintenance Department. She reported to two managers who reported to Prinvil. Walker served as a senior clerk-typist in the Tax Collector's Office; she did not work in the Property Maintenance

4

Department or report to Prinvil, but conducted tax searches in an area adjoining his office in City Hall.

The three plaintiffs alleged that they were each subjected to sexual harassment by Prinvil in separate incidents occurring in City Hall in 2009. According to Griffin, on October 15, 2009, when she was in Prinvil's office to discuss a work issue, he closed the door, grabbed her face with his hand, and kissed her. Best alleges that in May 2009, when she was in Prinvil's office to discuss a conflict that she had with another co-worker, Prinvil kissed her. Walker contends that at various times, Prinvil told her that he was attracted to her, proclaimed that he loved her, and inquired whether he and she could be "more than just friends." She contends that in August 2009, Prinvil attempted to kiss her while she was in his office.

Prinvil testified that he never attempted to kiss any of the three plaintiffs. He and the City denied all of plaintiffs' allegations of sexual harassment.

According to Hicks, she and Griffin were longtime friends who spent substantial time together outside of work. By Hicks's account, she was acquainted with Best and Walker because of their employment at City Hall, but did not know either co-worker well. Hicks did not claim to have personal knowledge of any of the incidents described by plaintiffs; when those incidents allegedly occurred, Hicks was employed as a research assistant

5

in Mayor Bowser's office, not in the Property Maintenance Department.  However, Hicks and Griffin both stated that they discussed the alleged incident between Prinvil and Griffin shortly after it occurred.

Griffin filed an internal complaint with the City on October 20, 2009, describing not only her own allegations but also those of Best and Walker.  Walker also filed her internal complaint on October 20, 2009, and Best did the same two days later.

In the wake of plaintiffs' allegations, the City Council retained an outside attorney, Dina Mastellone (Mastellone), to conduct an independent investigation.  Over the course of three days, Mastellone interviewed Griffin, Best, Walker, Prinvil, and five other City employees, and reviewed relevant documents.

Several weeks after Mastellone's interviews were conducted, but prior to the completion of her investigative report, she was asked by a representative of the City to interview Hicks.  In that interview, Hicks stated that Griffin and Best "have always been a mess."  Hicks expressed her view that Griffin "preys on older married men," and said that she suspected that Griffin and Prinvil had a "personal relationship."  Hicks also told the investigator that Griffin had serious financial problems, and that her complaint was filed in an effort to "take money from the City."  Hicks reported that Griffin considered Best's claims

6

to be a fabrication, in an attempt to "jump[] on the gravy train."

In her statements to Mastellone, Hicks portrayed Prinvil as a "phenomenal director" who was cautious by nature. She said that Prinvil was in a perpetual "damage control state" and that he acted professionally in the workplace. Hicks stated that she and Prinvil sometimes greeted one another with a hug, but that he "has always drawn a space limitation with the hugs."

In the report of her investigation, Mastellone concluded that it was more likely than not that Prinvil engaged in inappropriate behavior with Griffin and Walker, but that he did not conduct himself inappropriately with Best. The investigator stated that Prinvil was considered a professional and respected manager. She found that Griffin, Best, and Walker would routinely greet Prinvil with a hug, and occasionally with a kiss on the cheek. The investigator concluded that none of the three complainants had been sexually harassed, and that none of the incidents subjected plaintiffs to a hostile work environment based on their gender.

In internal disciplinary proceedings, Prinvil was charged with "inappropriate behavior in the workplace" and "insubordination for failure to turn over departmental records, as directed by the City Administrator and the Mayor." Prinvil was suspended from his employment for three days. On the same

7

day that he approved the disciplinary charges against Prinvil, Mayor Bowser reappointed Prinvil to a new term as Director of Property Maintenance.

## II.

In separate complaints consolidated for discovery and trial, plaintiffs sued the City, Prinvil, and two other individual defendants.[1]  As amended, plaintiffs' complaints set forth LAD claims against the City based on allegations of hostile work environment sexual harassment, quid pro quo sexual harassment, and retaliation.  Among other affirmative defenses, the City asserted that it took reasonable care to prevent and promptly correct any harassing behavior, and that it implemented, applied, and disseminated effective anti-harassment policies and procedures.

After plaintiffs instituted their action, Hicks filed a separate, unrelated complaint against the City with the federal Equal Employment Opportunity Commission (EEOC).  She later filed an action against the City, Mayor Bowser, and another individual defendant, alleging LAD claims of gender discrimination, hostile work environment sexual harassment, retaliation, and disparate

---

[1] Prior to trial, the parties executed a stipulation dismissing the claims against the individual defendants.  The City was the sole remaining defendant at trial.

8

treatment, as well as claims based on alleged violations of her rights to free speech and equal protection.

In a subpoena served on Hicks for a deposition and document production in this case, plaintiffs sought documents regarding Hicks's EEOC complaint against the City and Mayor Bowser. Defendants moved to bar plaintiffs from seeking information about the EEOC complaint. The trial court granted defendants' application. It ruled that Hicks's deposition testimony in this matter would not "relate[] to [Hicks's] EEOC charge and confidential sexual harassment investigation of Hicks'[s] complaint."

Subject to the limitations imposed by the trial court, plaintiffs deposed Hicks in this action. During her deposition, Hicks claimed, for the first time, that Mayor Bowser had spoken with her prior to her interview with Mastellone. She testified that Mayor Bowser told her that he had instructed Prinvil to "keep his hands to himself." Hicks said that the Mayor instructed her to undermine Griffin's credibility in her interview with the investigator. According to Hicks, Mayor Bowser told her to "[d]iminish the bitch's character. You know what to do. You know how the game is played. I want the bitch out of here. And make sure I'm not involved in it. You know what to do, Corletta." Hicks testified that she assured Mayor Bowser, "[y]es sir, I got this."

Hicks also testified in her deposition that she was "advised" to "build up [Prinvil's] character." She said that she complied with that direction by accurately reporting to the investigator that Prinvil had never said or done anything in her presence that she considered to be unprofessional, and by "conjur[ing] up" a statement that Prinvil was a "cautious man" who was constantly in a "damage control state" and "always [drew] a space limitation with the hugs."

Prior to the commencement of trial, the City moved to bar Hicks from testifying at trial about her EEOC complaint and lawsuit against the City and Mayor Bowser. Plaintiffs consented to that limitation, but contended that Hicks should be permitted to testify before the jury about her interview with the investigator in this matter. The motion judge reaffirmed that Hicks would not be permitted to testify about her separate complaint and lawsuit against the City, but did not address any other aspect of Hicks's potential testimony.

Prior to opening statements, the City again raised the subject of Hicks's proposed testimony. The City's counsel told the trial judge that plaintiffs should not be permitted to discuss Hicks's allegation that Mayor Bowser had "corrupt[ed]" the investigation, because that allegation was connected to Hicks's separate litigation against the City and Mayor Bowser. In response, plaintiffs' counsel argued that Hicks's testimony

10

about Mayor Bowser's purported statements was directly relevant to plaintiffs' hostile work environment and punitive damages claims.

The trial court ruled that the disputed evidence would not be relevant to any issue other than plaintiffs' claims for punitive damages, which would not be considered until a later phase of the case, if at all. The court determined that any instruction by Mayor Bowser to Hicks could not have affected the investigative report, because that report was favorable to Griffin. The trial court, therefore, barred plaintiffs from presenting Hicks's testimony on any subject.

At trial, the City substantially relied on Mastellone's investigation. In her testimony, the investigator identified Hicks's interview as one of the factors on which she relied to determine that Best was not credible and fabricated her complaint.

In his testimony, Mayor Bowser described the City's retention of the investigator and the investigator's conclusions. In compliance with the trial court's order, Hicks's allegation that Mayor Bowser had directed her to disparage Griffin and promote Prinvil was not raised in the direct or cross-examination of Mayor Bowser.

Prior to Griffin's testimony, plaintiffs' counsel asked the trial court to reconsider its ruling barring Hicks from

11

testifying about her alleged conversation with Mayor Bowser. Counsel cited the City's reliance on Hicks's statements in the investigator's report, and the fact that the jury had heard from every witness interviewed by the investigator, other than Hicks. The trial court denied plaintiffs' application.

At the close of the evidence, the trial court granted the City's motion for a directed verdict as to Walker's quid pro quo sexual harassment claim and plaintiffs' punitive damages claim. The remaining issues were submitted to the jury. The jury returned a verdict of no cause as to all claims, and the trial court entered judgment in favor of the City.

Plaintiffs appealed the trial court's judgment. An Appellate Division panel affirmed the trial court's evidentiary determinations, including its decision to bar Hicks's testimony, as well as its directed verdict on Walker's quid pro quo sexual harassment claim and the punitive damages claims. The panel concurred with the trial court that Hicks had no relevant knowledge, because she did not work in the City's Property Maintenance Department, and ruled that even if her testimony had been relevant, it would have been unduly prejudicial.

We granted certification, limited to the question of "whether the trial court erred in barring the testimony of a witness who claimed that her superiors directed her to lie to the person investigating plaintiffs' claims of sexual

12

harassment." 220 N.J. 265 (2015). We also granted the motion of New Jersey Association for Justice (NJAJ) to appear as amicus curiae.

                              III.

Plaintiffs contend that the trial court's evidentiary ruling regarding Hicks gave rise to a manifest denial of justice. They argue that Hicks's testimony would have been central to the question of the City's vicarious liability for hostile work environment sexual harassment, because it established that the City's upper management was not committed to addressing sexual harassment in the workplace, and actively interfered with an independent investigation. Plaintiffs assert that the evidence was also relevant to their claim for punitive damages. In addition, they contend that Mayor Bowser's alleged statements were admissible under N.J.R.E. 803(b)(4), as a statement by a party's agent or servant offered against that party.

The City counters that the trial court properly barred Hicks from testifying because her testimony would have been irrelevant and highly prejudicial. It states that its primary argument at trial was that the incidents described by plaintiffs never occurred, not that the City had an effective sexual harassment policy and took appropriate remedial action in response to plaintiffs' claims. The City stresses that Hicks

                              13

was not employed in the department in which the alleged harassment occurred, that she was unfamiliar with the environment in that department, and that she had no personal knowledge of plaintiffs' allegations. The City asserts that the admission of Hicks's testimony would have been substantially prejudicial to it, particularly in light of Hicks's separate litigation, and that the evidence was properly excluded under N.J.R.E. 403.

Amicus curiae NJAJ urges the Court to hold that Hicks's testimony was relevant and should have been admitted. NJAJ argues that the City raised an affirmative defense that it had an effective anti-discrimination policy and remedial measures, and that Hicks's testimony would have directly undermined that defense. It urges the Court to reverse the Appellate Division's judgment.

IV.

A.

When a trial court admits or excludes evidence, its determination is "entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment." State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). Thus, we will reverse an evidentiary ruling only if it "was so wide off the mark that a manifest denial of justice resulted." Green v. N.J.

14

Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (internal quotation marks and citation omitted); see also Marrero, supra, 148 N.J. at 484; State v. Carter, 91 N.J. 86, 106 (1982).

B.

Our analysis of the trial court's evidentiary ruling begins with the question of relevancy, "the hallmark of admissibility of evidence." State v. Darby, 174 N.J. 509, 519 (2002). Relevant evidence is evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. To decide whether evidence is relevant,

> the trial court should focus on "the logical connection between the proffered evidence and a fact in issue[,]" N.J.R.E. 401, Comment 1 (quoting State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990)), or "the tendency of evidence to establish the proposition that it is offered to prove," State v. Wilson, 135 N.J. 4, 13 (1994).
>
> [Green, supra, 160 N.J. at 492.]

In accordance with N.J.R.E. 401, we consider the connection between the statements that Hicks attributed to Mayor Bowser and plaintiffs' claims for compensatory and punitive damages arising from alleged hostile work environment sexual harassment.

To prove a LAD claim for hostile work environment sexual harassment, a plaintiff has the burden to demonstrate that "the complained-of conduct (1) would not have occurred but for the

15

employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993). "When the harassing conduct is sexual or sexist in nature," as "when a plaintiff alleges that she has been subjected to sexual touchings or comments," the first element "will automatically be satisfied." Id. at 605. However, a LAD plaintiff is also compelled to prove that the harassing conduct, "not its effect on the plaintiff or on the work environment," was "severe or pervasive." Id. at 606 (citing Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991)). To satisfy the third and fourth factors, a LAD plaintiff must show "that her working conditions were affected by the harassment to the point at which a reasonable woman would consider the working environment hostile." Id. at 610.

In this case, plaintiffs allege that the City should be liable because they were sexually harassed by a supervisor.[2] The

---

[2] For purposes of a LAD hostile work environment sexual harassment case, an employee is a "supervisor" if he or she either was authorized to undertake tangible employment decisions affecting the plaintiff, or was authorized by the employer to direct the plaintiff's day-to-day work activities. See Aguas v. State, 220 N.J. 494, 525-29 (2015). Although Walker did not work in the Department managed by Prinvil, the City evidently does not dispute Prinvil's status as a supervisor for purposes of any of the three plaintiffs' LAD claims.

Court recognized in Lehmann that an employer can be held liable for sexual harassment committed by a supervisor, consistent with the principles of agency law set forth in Restatement (Second) of Agency §§ 219(1)-(2) (hereinafter Restatement).  132 N.J. at 619-20.  Restatement § 219(2) provides:

> A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> (a) the master intended the conduct or the consequences, or
> (b) the master was negligent or reckless, or
> (c) the conduct violated a non-delegable duty of the master, or
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Here, plaintiffs asserted two distinct theories of employer liability for hostile work environment sexual harassment, each based on the agency principles of Restatement § 219(2).  The first is a claim that the City was directly liable for negligence under Restatement § 219(2)(b).  Plaintiffs' direct negligence claim requires proof that the City "failed to exercise due care with respect to sexual harassment in the workplace, that its breach of the duty of due care caused [plaintiffs'] harm, and that [plaintiffs] sustained damages."  Aguas, supra, 220 N.J. at 512.

17

This Court has identified five factors to be applied to a claim that an employer is directly liable, on a negligence or recklessness theory, for sexual harassment in the workplace:

> Those factors include[] the existence of: (1) formal policies prohibiting harassment in the workplace; (2) complaint structures for employees' use, both formal and informal in nature; (3) anti-harassment training, which must be mandatory for supervisors and managers, and must be available to all employees of the organization; (4) the existence of effective sensing or monitoring mechanisms to check the trustworthiness of the policies and complaint structures; and (5) an unequivocal commitment from the highest levels of the employer that harassment would not be tolerated, and demonstration of that policy commitment by consistent practice.
>
> [Id. at 513 (alteration in original) (quoting Gaines v. Bellino, 173 N.J. 301, 313 (2002)).]

Accordingly, City officials' express commitment and concrete steps to eradicate sexual harassment -- or the lack thereof -- are pivotal issues in plaintiffs' direct negligence claims.

Plaintiffs' second hostile work environment sexual harassment claim, an allegation that the City is vicariously liable for Prinvil's alleged conduct pursuant to Restatement § 219(2)(d), similarly hinges on the conduct of the City's senior management. Under their vicarious liability theory, plaintiffs had the burden to show either that the alleged "harasser purported to act on the employer's behalf and" that "'there was

18

reliance upon [his or her] apparent authority,'" or that "the harasser 'was aided in [his or her misconduct] by the existence of an agency relation[ship]' with his or her employer." Aguas, supra, 220 N.J. at 514 (alterations in original) (quoting Lehmann, supra, 132 N.J. at 619); see also Dunkley v. S. Coraluzzo Petroleum Transporters, 441 N.J. Super. 322, 327-29 (App. Div. 2015), certif. denied, 224 N.J. 120 (2016). Thus, the attitude of City officials toward sexual harassment is at the core of plaintiffs' hostile work environment harassment claim, under their theory of vicarious liability.

Moreover, as an affirmative defense to plaintiffs' claim of vicarious liability under Restatement § 219(2)(d), the City relied on its implementation of effective anti-harassment policies and procedures. See Aguas, supra, 220 N.J. at 524 (recognizing affirmative defense based on employer's exercise of reasonable care to prevent and correct promptly harassing behavior, and employee's unreasonable failure to take advantage of preventive or corrective opportunities or otherwise avoid harm); Gaines, supra, 173 N.J. at 320 (noting availability of affirmative defense to vicarious liability claims if employer implements effective anti-sexual harassment workplace policy); Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 120-21 (1999) (recognizing defense for employers "who promulgate and support an active, anti-harassment policy"); Lehmann, supra, 132 N.J. at

19

626 (stating importance of incentive for employers not only to provide voluntary compliance programs, but to insist on effective enforcement of such programs).

In support of its affirmative defense to plaintiffs' vicarious liability claims, the City argued that it took reasonable steps to prevent sexual harassment, and to respond to plaintiffs' allegations when it learned of them. The City heavily relied on the information provided by its employees to the investigator, and emphasized Mayor Bowser's leadership in the City's anti-discrimination initiatives. As a key defense to plaintiffs' vicarious liability theory, the City contended that its senior management diligently worked to prevent and address sexual harassment.

Finally, plaintiffs' claims for punitive damages for hostile work environment sexual harassment compelled an assessment of the manner in which the City's upper management addressed the conduct alleged by plaintiffs. A "public sector employer[] whose egregious conduct violates the LAD may be held 'liable for punitive damages . . . only in the event of actual participation by upper management or willful indifference.'" Lockley v. Dep't of Corr., 177 N.J. 413, 424 (2003) (quoting Cavuoti, supra, 161 N.J. at 117); see also Aguas, supra, 220

20

N.J. at 529.[3]  Plaintiffs had the burden to prove the elements of their claim by clear and convincing evidence.  Aguas, supra, 220 N.J. at 529 (citing Lockley, supra, 177 N.J. at 432); Lehmann, supra, 132 N.J. at 624-25).  Their punitive damages claim for hostile work environment sexual harassment, dismissed by directed verdict prior to trial, thus implicated the conduct of Mayor Bowser and others who comprised the City's "upper management."

In that setting, we consider the relevance of Hicks's testimony to plaintiffs' hostile work environment sexual harassment claims.  The trial court's decision to bar plaintiffs from calling Hicks as a witness was premised on her lack of personal knowledge of the incidents of sexual harassment alleged by plaintiffs, and her limited knowledge of the working environment in the Department of Property Maintenance, to which she was not assigned.  In the trial court's view, Hicks's testimony bore no relationship to the issues before the jury, with the exception of plaintiffs' claim for punitive damages --

---

[3] For purposes of plaintiffs' punitive damages claims, the term "upper management" denotes the officials "responsible to formulate the organization's anti-discrimination policies, provide compliance programs and insist on performance (its governing body, its executive officers)," among others. Cavuoti, supra, 161 N.J. at 128; see also Aguas, supra, 220 N.J. at 529-30.

a claim that would be considered only in the second phase of a bifurcated trial, if it were decided at all.

Although Hicks did not witness the incidents allegedly involving Prinvil, her testimony directly related to the attitude of the City's upper management toward sexual harassment in general, and its response to plaintiffs' allegations in particular.  Had Hicks testified, the jury could have found her unreliable and discounted her accusation against Mayor Bowser.  Were the jury to believe Hicks's account of that conversation, however, it might have concluded that the City's most senior official materially interfered with the independent investigation of plaintiffs' claims.  Such a finding would have supported plaintiffs' hostile work environment sexual harassment claims under both the direct and vicarious liability theories, undermined the City's defense to those claims, and strengthened plaintiffs' claims for punitive damages.

Consequently, Hicks's testimony, if allowed at trial, would have had the requisite "tendency in reason to prove or disprove [facts] of consequence to the determination" under N.J.R.E. 401.  We find the proffered evidence to be directly relevant to plaintiffs' hostile work environment sexual harassment claims.[4]

---

[4] We do not find Hicks's testimony to be relevant to the two remaining claims, for quid pro quo sexual harassment and retaliation, which were pled in plaintiffs' complaints.  Neither claim was the focus of the trial.  Hicks did not claim to have

Accordingly, had Hicks testified at trial as she did at her deposition, her testimony would have met N.J.R.E. 401's relevancy standard as to one of plaintiffs' three LAD claims: their claims for compensatory and punitive damages based on alleged hostile work environment sexual harassment.

### C.

Our determination of relevancy does not entirely resolve the question of admissibility. Hicks's proposed testimony about her alleged conversations with Mayor Bowser included out-of-court statements "offered in evidence to prove the truth of the matter asserted," and therefore implicates the hearsay rule. N.J.R.E. 801(c). Under our Rules of Evidence, hearsay is inadmissible "except as provided by these rules or by other law." N.J.R.E. 802. Accordingly, we consider an issue not reached by the trial court or the Appellate Division: whether the evidence at issue is admissible under N.J.R.E. 803(b), which

---

personal knowledge of conversations between Prinvil and any of the plaintiffs, let alone evidence that plaintiffs were subjected to threats of adverse employment action if they did not accede to Prinvil's alleged demands, or that they suffered retaliation. Moreover, Hicks's testimony about comments of Mayor Bowser's did not relate to either quid pro quo sexual harassment or retaliatory adverse employment actions against plaintiffs. Thus, our determination that Hicks's testimony would have met the relevance standard of N.J.R.E. 401 is limited to plaintiffs' compensatory and punitive damages claims arising from alleged hostile work environment sexual harassment.

23

provides for an exception to the hearsay rule for a statement by a party-opponent.

Because Mayor Bowser is not a party to the litigation, the relevant subsection is N.J.R.E. 803(b)(4). That rule provides that a hearsay statement made by a "party-opponent" will not be excluded by the hearsay rule if it constitutes "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" N.J.R.E. 803(b)(4); see also Spencer v. Bristol-Meyers Squibb Co., 156 N.J. 455, 461-63 (1998) (stating requirements of N.J.R.E. 803(b)(4)); In re Op. 668 of the Advisory Comm. on Prof'l Ethics, 134 N.J. 294, 300 (1993) (same); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 4 on N.J.R.E. 803(b)(4) (2016). Thus, the alleged statements made by Mayor Bowser are admissible if he was an agent of the City at the relevant time, and if his statements concern a matter within the scope of his agency or employment. See N.J.R.E. 803(b)(4); Spencer, supra, 156 N.J. at 461-63.

Mayor Bowser was the City's agent when he allegedly spoke with Hicks about her interview with the investigator. Based upon undisputed evidence adduced at trial, the Mayor was the senior official in the City's organizational structure. At trial, Mayor Bowser testified that he had the authority to discipline a department manager such as Prinvil in the event

24

that he sexually harassed another employee, that he used that authority to approve disciplinary charges against Prinvil, and that he was Hicks's supervisor.

Moreover, the alleged statements concerned a matter within the scope of Mayor Bowser's agency for, or employment with, the City. According to Hicks, her conversation with the Mayor took place in his office as they strategized about an interview, initiated by the City, to be conducted by the City's outside investigator with its employee. Mayor Bowser's alleged statements related to Prinvil and Griffin, both City employees. Those statements directly concerned his responsibilities as Mayor.

Thus, the hearsay statements in Hicks's proposed testimony meet both requirements of N.J.R.E. 803(b)(4), and are within an exception to the hearsay rule.

D.

Finally, we consider the City's argument that even if Hicks's testimony were relevant under N.J.R.E. 401 and not subject to exclusion under the hearsay rule, it nonetheless should be barred pursuant to N.J.R.E. 403. That rule authorizes a trial court to exclude relevant evidence "if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of

25

cumulative evidence." N.J.R.E. 403. The party seeking the exclusion of the evidence must demonstrate that one or more of the factors listed in N.J.R.E. 403 substantially outweighs the probative value of the evidence. See, e.g., State v. Wakefield, 190 N.J. 397, 434 (2007), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008); State v. Koskovich, 168 N.J. 448, 486 (2001); State v. Morton, 155 N.J. 383, 453 (1998), cert. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001).

In this case, the N.J.R.E. 403 factor invoked by the City is the risk of undue prejudice. In pretrial motions, the City's prejudice argument was limited to a single issue: Hicks's potential testimony about her unrelated EEOC complaint and litigation against the City and Mayor Bowser.[5] At trial, however, the City objected on grounds of prejudice to all of Hicks's potential testimony, including her statements about Mayor Bowser's alleged instructions regarding her interview with the investigator. Although the trial court primarily relied on the relevancy standard of N.J.R.E. 401 and did not conduct an analysis under N.J.R.E. 403, it briefly mentioned prejudice as an additional factor in its decision. Accordingly, we determine

---

[5] The trial court's ruling that Hicks would not testify about her separate EEOC complaint and litigation was consented to by plaintiffs at trial, and is not before the Court in this appeal.

26

whether the probative value of Hicks's potential testimony about her alleged conversation with Mayor Bowser is substantially outweighed by the risk of undue prejudice.

As this Court has observed, when a party challenges the admission of evidence under N.J.R.E. 403, the question is not whether the challenged testimony will be prejudicial to the objecting party, "but whether it will be unfairly so." Stigliano v. Connaught Labs., Inc., 140 N.J. 305, 317 (1995); see also Biunno, Weissbard & Zegas, supra, comment 5 on N.J.R.E. 403. "Evidence claimed to be unduly prejudicial is excluded only when its 'probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." Koskovich, supra, 168 N.J. at 486 (alteration in original) (quoting State v. Thompson, 59 N.J. 396, 421 (1971)); see also State v. Long, 173 N.J. 138, 163-64 (2002). As this Court noted in the context of a dispute over evidence suggesting that a malpractice defendant altered medical records,

> [t]o be sure, the alteration [of] evidence would have had a substantial impact on [the defendant chiropractor's] case. But that is what happens when there is powerful and persuasive evidence. That does not mean, as [the defendant] has argued, that it should be excluded under N.J.R.E. 403. . . . The mere fact that "evidence is shrouded with unsavory

27

> implications is no reason for exclusion when it is a significant part of the proof."
>
> [Rosenblit v. Zimmerman, 166 N.J. 391, 410 (2001) (quoting State v. West, 29 N.J. 327, 335 (1959)).]

In Kalola v. Eisenberg, 344 N.J. Super. 198, 210-11 (Law Div. 2001), a dental malpractice case, the court considered evidence of telephone calls allegedly made by the defendant dentist to the plaintiff's current treating dentist, who criticized the work performed by the defendant. The treating dentist was expected to testify that during these calls, the defendant asked him to "look at things differently," and stated that based upon his stature in the profession, he could "make things really difficult" for the treating dentist. Id. at 202 (internal quotation marks omitted). The Law Division rejected the defendant's N.J.R.E. 403 challenge to the evidence. Id. at 210-11. It noted that if the telephone calls actually occurred as reported by the witness, the jury could either construe them as "impermissible retaliatory behavior" or an innocuous expression of a professional's "natural feelings of agitation in the heat of the moment," but that the evidence should not be excluded as unduly prejudicial. Id. at 211.

This case warrants a similar conclusion. Had plaintiffs been permitted to call Hicks as a witness, subject to the City's cross-examination, her testimony about Mayor Bowser could have

28

been accepted as true or rejected as incredible by the jury. It is not inadmissible, however, merely because it could have negatively impacted the defense. Hicks's account directly challenged the integrity of the information the City provided to its independent investigator, and was highly relevant to plaintiffs' primary LAD claim. Although the evidence was potentially damaging, its probative value was not substantially outweighed by a risk of undue prejudice. Hicks's testimony, therefore, was not subject to exclusion under N.J.R.E. 403.

In sum, we conclude that the trial court's decision to bar Hicks's testimony about her alleged conversation with Mayor Bowser, prior to her interview with the City's investigator, was an abuse of discretion. That testimony should have been admitted into evidence at trial.

V.

We affirm in part and reverse in part the judgment of the Appellate Division. We concur with the Appellate Division that the trial court properly dismissed plaintiffs' claims for quid pro quo sexual harassment and retaliation under LAD. We reverse the Appellate Division's judgment affirming the trial court's dismissal of plaintiffs' claims for compensatory and punitive damages arising from alleged hostile work environment sexual harassment, and remand those claims to the trial court for a new trial.

29

CHIEF JUSTICE RABNER, JUSTICES ALBIN and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICES LaVECCHIA and FERNANDEZ-VINA did not participate.