# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0914-16T4

B.R.N.,

    Plaintiff-Respondent,

v.

D.C.,

    Defendant-Appellant.

_____

Argued June 5, 2018 — Decided August 8, 2018

Before Judges Fisher and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-0029-17.

Mark W. Catanzaro argued the cause for appellant.

Mary Ann C. O'Brien argued the cause for respondent (Crammer, Bishop, & O'Brien, attorneys; Mary Ann C. O'Brien, on the brief).

PER CURIAM

Defendant appeals from a final restraining order (FRO) under the Prevention of Domestic Violence Act of 1991 (the Act), N.J.S.A. 2C:25-17 to -35, entered against him, as well as the

denial of his motion to reconsider the issuance of the FRO. We affirm.

At the FRO hearing, the testimony revealed the following. Seven months after being widowed, plaintiff began a dating relationship with defendant that lasted about nine months.[1] Plaintiff ended the relationship the day after defendant called her a "dick," despite her previous admonitions that he not do so, by leaving a letter at his house stating:

> [D]
>
> I should have gotten up and walked out last night right when you called me a Dick! Instead I stewed about it all night. I thought I made it clear I don't like it. You must think it's funny but I don't! I cannot or will not stand for anyone calling me that. PLEASE do not try to call, text or get in contact with me. I have nothing to say to you & you have said enough to me. I'm done. Thank you & good luck -
>
> [B]
>
> [(Emphasis added.)]

After not hearing from defendant for a few weeks following the break-up, plaintiff received four text messages from defendant's cell phone over a four-day period. The messages referenced: her as a "rotten human being," her departed husband

---

[1] Within six months of dating, the parties broke up but rekindled their relationship in short order.

and deceased dog as being "glad to be free of" her, and wanting her to "catchup" with him. She did not respond to any of the communications, but reported the unwelcomed texts to the local police, asking that defendant be warned to stop contacting her. She was advised that her request would be honored. On the same day and also two days later, defendant, admittedly using a fictitious name to "disguise his identity," sent plaintiff emails each day. Plaintiff did not respond to the emails. Although the record is not clear when the police contacted defendant, he acknowledged the police contacted him but claimed he did not "remember the exact phone conversation."

Four days after plaintiff contacted the local police, defendant, knowing that plaintiff did not want him to contact her, made six phone calls to the beauty salon where plaintiff worked to try to schedule a pedicure appointment with her. Plaintiff did not speak to him during any of those calls.

After almost a three-week lull, plaintiff began receiving almost seventy text messages — for nearly two months — from a cell number that she did not recognize. Without objection, plaintiff testified as to the contents of those texts, and stated she suspected the texts were from defendant because they referenced the "D" word; contained personal information about her — her horse's name and her brother, who she lived with —

that only defendant knew; asked why she hated him; and suggested that he knew whether she was home or not. Defendant denied sending or having any knowledge of the texts, but acknowledged that he got a new cell phone around that time period.

Disturbed by the astounding number of text messages she received, plaintiff contacted the New Jersey State Police and filed a harassment complaint to obtain a TRO.[2] Plaintiff contended that defendant was harassing her

> "by driving by her house and constantly texting [her] for several weeks," and he continued to text her - despite being warned by the New Jersey State Police — and after she "blocked [his] number [,] . . . [he] began harassing her from a new cell phone number."

The complaint was later amended to include a charge of stalking and contempt of a domestic violence order. Plaintiff testified she did not receive texts from the unknown number or from defendant's cell phone, or receive any other form of communication from defendant, after the TRO was issued against defendant and he was arrested.

---

[2] In the TRO application, plaintiff complained that defendant was harassing her "by driving by her house and constantly texting [her] for several weeks," and he continued to text her - despite being warned by the New Jersey State Police — and after she "blocked [his] number [,] . . . [he] began harassing her from a new cell phone number."

A-0914-16T4

At the close of the hearing, the trial judge — noting plaintiff's testimony was credible — applied the two-prong test to grant a FRO. <u>Silver v. Silver</u>, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, the judge found that defendant committed harassment, a predicate act of domestic violence under N.J.S.A. 2C:25-19(a)(13), because plaintiff proved that after she delivered the letter to defendant telling him not to communicate with her, there were text messages from his cell phone number, emails from his email address, and his phone calls to her salon. Although plaintiff was allowed to read into the record the abundant number of text messages sent from the unknown cell phone, the judge's harassment finding only relied upon the messages from that number, which referenced the "D" word, her horse, and her brother because the judge believed her testimony that this information was known only by defendant. The judge found that all these communications, understandably annoyed her. On the other hand, the judge found there was insufficient proof of stalking because there was no threat of bodily injury. N.J.S.A. 2C:12-10.

Second, the judge found that a restraining order should be entered to protect plaintiff from defendant. She reasoned that

> because of the persistent nature of . . .
> defendant . . . after no responses to his e-
> mails, text messages, and having been told

no contact he persisted, . . . it is very possible that he may continue to persist in asking for an explanation [as to why plaintiff ended their relationship]. So she does need a permanent restraining order.

The judge denied defendant's motion for reconsideration. In citing D'Atria v. D'Atria, 242 N.J. Super. 392 (Ch. Div. 1990) and Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996), the judge determined that considering the testimony, admitted evidence, and her credibility findings, there was no reason to change her decision to issue the FRO against defendant.

In his appeal, defendant contends that there was insufficient evidence to support the predicate act of harassment. We disagree.

Harassment occurs where a person:

> . . . with purpose to harass another . . . :
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

The judge's finding that defendant was guilty of harassing plaintiff is binding on appeal "when supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (citation omitted). This deference is particularly appropriate where the evidence at trial is largely testimonial and hinges upon a court's ability to assess credibility. Gnall v. Gnall, 222 N.J. 414, 428 (2015). We also keep in mind the expertise of judges who routinely hear domestic violence cases in the family court. J.D. v. M.D.F., 207 N.J. 458, 482 (2011). Consequently, we will not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)); see also S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010).

Guided by these standards, we find no basis to disturb the judge's findings applying the two-prong test of Silver that defendant harassed plaintiff through the noted communications that were unilaterally initiated by him after she told him not to contact her regarding her decision to end their dating

relationship, and that she needed the protection of an FRO due to defendant's persistent conduct.

In reaching this conclusion, we conclude there is no merit to defendant's claim that he was denied a fair trial because the judge improperly admitted evidence of the texts from the unknown cell phone number. The judge did not admit the text messages into evidence but allowed plaintiff to testify regarding the content of the texts as proof of the communications she received. By finding plaintiff credible, the judge was convinced that some of the messages came from defendant, or that he was involved in their transmission, because they included information about plaintiff that only he knew. We discern no abuse of the judge's discretion in making these evidentiary rulings. Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016). Moreover, even if we determine that the judge should not have considered the texts from the unknown cell phone number, such error is harmless because there were sufficient number of texts and emails from defendant and his phone calls to plaintiff's job that support a finding of harassment. See R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8

A-0914-16T4