**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5686-18

JEREMY D. PETERS,

     Plaintiff-Appellant,

v.

BONNIE A. MCCARTHY,

     Defendant-Respondent.

_____

Submitted April 19, 2021 – Decided October 22, 2021

Before Judges Hoffman, Suter, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2626-16.

Mallon & Tranger, attorneys for appellant (Randall L. Tranger, of counsel; Daniel B. Glatz, on the brief).

Law Offices of Styliades and Jackson, attorneys for respondent (Catherine A. Schmutz, of counsel and on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

After a verdict for defendant in a personal injury negligence trial, plaintiff appealed, arguing the judge erred in a series of evidential rulings both before and during trial. We reverse and remand for a new trial because defendant's expert testimony on biomechanics should have been barred consistent with the principles set forth in Hisenaj v. Kuehner, 194 N.J. 6 (2008).

I.

On the afternoon of April 18, 2016, defendant rear-ended plaintiff's vehicle while it was stopped at a controlled intersection. No police were called to the scene and no traffic citations were issued; however, later that day plaintiff filed a report at a police station and went to the emergency room. The record shows plaintiff sustained several injuries including: cervical disc herniation at C4-5, C5-6, and C6-7; cervical radiculopathy; lumbar sprain and strain with severe spasm; L5-S1 disc herniation; and lumbar radiculopathy.

Plaintiff sued defendant. After discovery ended, plaintiff filed several pre-trial motions in limine, including a motion to bar all testimony from defendant's expert, Dr. Samuel Wordeman, and to bar any reference to the fact that the police were not called to the accident scene. The trial court denied both motions after hearing argument from counsel. The court found the fact that police were not called to the scene was relevant to the "disputed matter as to the

A-5686-18

degree of the impact . . . [and] the extent of the injuries suffered . . . ." As to the expert testimony, the court barred Dr. Wordeman from testifying about airbag deployment at the crash scene because his report contained no foundation for such testimony. The court deferred its decision on the motion to bar all of Dr. Wordeman's testimony, stating that it expected defendant to lay a foundation at trial for the doctor's opinion consistent with the Supreme Court's holding in Hisenaj. Id. at 25.

At trial, Dr. Wordeman testified that the subject accident was not severe enough to cause plaintiff's injuries. The documents that he relied on included: (1) the police report (filed by plaintiff during a trip to the police station after the collision); (2) photographs and repair estimates for both vehicles; (3) plaintiff's medical records; (4) the pleadings; and (5) answers to interrogatories and the parties' depositions. Dr. Wordeman also reviewed various scientific studies and cited calculations that he performed in arriving at his opinion on causation.

On July 16, 2019, the jury returned a verdict in favor of defendant. On appeal, plaintiff argues three points: Dr. Wordeman's expert opinion testimony should have been barred in its entirety; testimony that the police were not called should have been excluded on relevancy grounds; and plaintiff should have been

3

permitted to testify about why he discontinued treatment in February 2017, after defendant raised the issue in opening arguments.

## II.

When considering a trial court's evidentiary rulings, our standard of review is well settled. "When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)) (alteration in original). "Thus, we will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

N.J.R.E. 702 provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

N.J.R.E. 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the proceeding. If of a type reasonably relied upon by experts in the particular field in forming opinions or

A-5686-18

inferences upon the subject, the facts or data need not be admissible in evidence.

A determination on the admissibility of expert evidence is committed to the sound discretion of the trial court. Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). A trial court's grant or denial of a motion to preclude expert testimony is entitled to deference on appellate review. Ibid. As instructed by the Supreme Court, "we apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)) (alteration in original).

In New Jersey, scientific evidence is admissible in a civil case if "it derives from a reliable methodology supported by some expert consensus." Suanez v. Egeland, 353 N.J. Super. 191, 195 (App. Div. 2002) (citations omitted). There are three ways a party offering the results of scientific evidence can demonstrate its reliability: "(1) the testimony of knowledgeable experts; (2) authoritative scientific literature; and (3) persuasive judicial decisions." Id. at 195-96 (citations omitted). A party offering novel scientific evidence bears the burden of demonstrating its reliability. Id. at 196 (citation omitted).

5

In re Accutane Litigation, 234 N.J. 340 (2018), represents the Court's adoption of certain factors that trial courts must utilize when assessing the admissibility of expert testimony in civil cases.[1] Id. at 347-48. The non-exhaustive list of factors identified in Accutane to be used in conjunction with N.J.R.E. 702 and 703 are as follows:

> 1) Whether the scientific theory can be, or at any time has been, tested;
>
> 2) Whether the scientific theory has been subjected to peer review and publication, noting that publication is one form of peer review but is not a "sine qua non";
>
> 3) Whether there is any known or potential rate of error and whether there exist any standards for maintaining or controlling the technique's operation; and
>
> 4) Whether there does exist a general acceptance in the scientific community about the scientific theory.
>
> [Id. at 398.]

When determining whether to admit complex expert opinion testimony in a civil case, trial courts serve a gatekeeper function, expected to "assess both the methodology used . . . to arrive at an opinion and the underlying data used in the formation of the opinion." Id. at 396-97.

---

[1] These factors are referred to throughout Accutane as "Daubert factors," or the "Daubert standard." See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

On appeal, plaintiff argues that Dr. Wordeman's expert opinion testimony should have been barred from trial. We agree.

At the motion in limine hearing before trial, plaintiff moved to bar Dr. Wordeman's opinion that the rear-end vehicle collision did not cause plaintiff's spinal injuries. Plaintiff argued that the data and studies Dr. Wordeman relied upon and referenced in his written expert report were insufficient to support his conclusion. However, the trial court conditionally denied the motion in limine, citing Hisenaj. The court stated that it "expect[ed] to hear . . . that the defense expert relied upon studies involving specific crash-like conditions over a period of time which [the expert] believes are analogous . . . not the same vehicles, not the exact same accident, but low-velocity impact."

Hisenaj involved a low-impact, vehicle-on-vehicle rear-end collision in which the plaintiff alleged cervical and lumbar injuries as a result of the collision. Hisenaj, 194 N.J. at 10-11. The plaintiff moved to bar the defense biomechanical expert opinion under N.J.R.E. 702. The trial court denied the motion and admitted the opinion. After a trial, the jury found no permanent injury and rendered a partial verdict for the defendant. We reversed, finding the trial court erred in admitting the defense expert opinion. The Supreme Court

7

found the trial court committed no error in admitting the expert opinion, noting that the expert relied on seventeen studies which "examined the outcomes of low-impact accidents on individuals of both genders and of various ages and body types." Id. at 20. The studies were "performed over a period of thirty-four years on more than two-hundred test subjects." Ibid. Further testimony revealed similarities between the test subjects and the plaintiff. For example, at least fifty-two of the two-hundred test subjects were the same gender as the plaintiff. The Court found that the defense expert relied on these detailed studies, which he testified were authoritative and generally accepted in the scientific community. Id. at 22. The Court concluded the testimony was admissible, finding that the record showed defense presented an "adequately reliable scientific foundation" at trial. Id. at 25.

The Court contrasted the Hisenaj record to the defense biomechanical expert record in Suanez, another low speed rear-end collision case where we held the defense biomechanical expert opinion was not admissible. Suanez, 353 N.J. at 203. We found that the scientific literature cited by the expert in Suanez simply did not provide a reliable basis for his opinion, as it involved tests "performed . . . upon cadavers or upon military personnel . . . ." Id. at 200. During testimony, the expert in Suanez struggled to indicate with particularity

8

the studies that supported his conclusion. Id. at 199-200. Instead, he relied mostly upon "unidentified articles" written by "unidentified authors" to support his theories. Id. at 201.

Keeping in mind the trial court's statement that it expected defense to meet the Hisenaj expert standard, we turn to the record to determine whether the trial court "assess[ed] both the methodology used . . . to arrive at an opinion and the underlying data used in the formation of the opinion." Accutane, 234 N.J. at 396-97.

After Dr. Wordeman was qualified as an expert without objection, the trial court conducted a brief Rule 104 hearing to hear his proffered testimony. Plaintiff objected to Dr. Wordeman's pending testimony, which the plaintiff characterized as more medical than biomechanical in nature, and therefore more properly the province of a medical witness rather than an engineering witness. The trial court overruled the objection, admitting Dr. Wordeman's entire expert testimony without hearing any additional proffer by the plaintiff. The court found that Dr. Wordeman's testimony would come in under N.J.R.E. 703 without undertaking further analysis.

Dr. Wordeman proceeded to testify at length concerning a wide range of topics beyond the ken of the average juror, including but not limited to: the

A-5686-18

effect of forces on the cervical and lumbar spine; unspecified studies and technical literature he used in forming his opinions; and his ultimate opinion that the forces resulting from the collision did not cause plaintiff's cervical or lumbar back injuries.

The trial court mistakenly exercised its discretion when it declined to assess the methodology and underlying data Dr. Wordeman used in forming his opinion during the Rule 104 hearing. Id. at 397-98. During the motion in limine hearing, the trial court correctly anticipated the need to perform its gatekeeping function in this highly complex and hotly contested expert field of biomechanical engineering. Then, during trial, it failed to take the next step under N.J.R.E. 703 and use the Daubert factors to assess the reliability of Dr. Wordeman's testimony. Its failure to "determine whether the scientific community would accept the methodology employed" by Dr. Wordeman before admitting his testimony was an error "so wide [of] the mark that a manifest denial of justice resulted." Griffin, 225 N.J. at 413.

Mindful of the clear boundaries set by the Court in Hisenaj, we are committed to the deferential standard of review applicable when trial courts decide the admissibility of expert opinion testimony. See Hisenaj, 194 N.J. at 25. We restrict the scope of our review to the record before the trial court, and

A-5686-18

do not engage in an "unconstrained review [of] . . . material not part of the evidentiary record and argument . . . beyond that which was advanced before the trial court." Ibid.

We simply note that the trial court's proper recognition of complex scientific testimony during the motion in limine required assessment of the reliability of that testimony pursuant to Rule 703 prior to its admission into evidence. This was clear from the trial court's comments during the Rule 104 hearing: citing to Hisenaj and directly informing counsel that it expected to hear testimony analogous to Hisenaj's expert testimony at trial. The trial court recognized it had an obligation to use the Daubert/Accutane gatekeeper factors to scrutinize Dr. Wordeman's opinion testimony before exposing the jury to it. Unfortunately, the testimony analogous to Hisenaj's expert testimony was never presented.

As a result, the trial court never performed the critical assessment required by Hisenaj, thereby abdicating its gatekeeper role. Because we find this lapse dispositive, we need not make findings on the sufficiency or reliability of Dr. Wordeman's referenced studies, as that would require us to reach beyond the trial record.

> Difficult as it may be, the gatekeeping role must be
> rigorous. In resolving issues of reliability of an expert's

A-5686-18

methodology in a new and evolving area of medical causation . . . [t]he court's function is to distinguish scientifically sound reasoning from that of the self-validating expert, who uses scientific terminology to present unsubstantiated personal beliefs.

[Accutane, 234 N.J. at 390.]

Our view of proper gatekeeping in a methodology-based approach to reliability for expert scientific testimony requires the proponent to demonstrate that the expert applies his or her scientifically recognized methodology in the way that others in the field practice the methodology. When a proponent does not demonstrate the soundness of a methodology, both in terms of its approach to reasoning and to its use of data, from the perspective of others within the relevant scientific community, the gatekeeper should exclude the proposed expert testimony on the basis that it is unreliable.

[Id. at 399-400.]

Defendant, the proponent of the Dr. Wordeman's testimony, made no such demonstration, nor did the trial court require it. On this record we discern no recourse but to reverse and remand this matter for a new trial.

For completeness, we comment upon plaintiff's remaining two appeal issues: the trial court's admission of testimony that the police were not called to the collision scene; and the trial court's exclusion of plaintiff's testimony about why he discontinued medical treatment. The trial court placed its reasons on the record in each matter, and our review reveals no abuse of discretion. We

12

conclude that the trial judge is entitled to deference on these two aspects of plaintiff's appeal.  <u>Griffin</u>, 225 N.J. at 413.

Reversed and remanded for a new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5686-18