**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0004-17T2

T.S.,[1]

    Plaintiff-Appellant,

v.

TOWNSHIP OF IRVINGTON
and ANTHONY VAUSS,

    Defendants-Respondents.

Argued November 26, 2018 – Decided March 14, 2019

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7401-14.

Paul R. Castronovo argued the cause for appellant (Castronovo & McKinney, LLC, attorneys; Paul R. Castronovo, of counsel and on the briefs; Megan Frese Porio, on the briefs).

Christopher W. Kinum argued the cause for respondent Anthony Vauss (Critchley, Kinum & DeNoia, LLC,

---

[1] We use initials to protect plaintiff's privacy.

attorneys; Christopher W. Kinum and Christopher L. Fox, of counsel and on the joint brief).

Genova Burns LLC, attorneys for respondent Township of Irvington (Angelo J. Genova and Nicholas J. Repici, of counsel and on the joint brief; Allison M. Benz, on the joint brief).

PER CURIAM

In this employment discrimination action, plaintiff T.S. appeals from a judgment of no cause of action following a jury verdict in favor of defendants Township of Irvington and Anthony Vauss. Plaintiff also appeals from the denial of her motion to dismiss defendant's[2] defamation counterclaim at the conclusion of his case. We affirm.

I.

Plaintiff contended that defendant sexually harassed her numerous times over the course of several months, when she was working as a public works inspector for the Township and defendant was her supervisor. Plaintiff claimed the sexual harassment continued when defendant became mayor-elect of the Township in May 2014, and he ultimately sexually assaulted her one month later. Thereafter, plaintiff told numerous people about her allegations.

---

[2] Because the factual circumstances of this matter pertain predominantly to defendant Vauss, references to "defendant" pertain solely to Vauss.

In October 2014, plaintiff filed this lawsuit alleging violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, claiming she suffered "severe emotional distress and humiliation" as a result of defendant's conduct. Defendants filed separate answers denying plaintiff's allegations; Vauss asserted several counterclaims, including defamation.[3]

At trial, plaintiff, a long-time employee of the Township, testified she asked defendant to consider changing her job title to bring it more in line with her duties if he became mayor. In response, defendant told plaintiff "to be his girl on the side" and that he would "take care of" plaintiff and her husband, Carl Brown, who also worked for the Township. Plaintiff stated defendant made other quid pro quo remarks to her, including "I'm telling you, I got you. The only thing you've got to do is be my girl."

Further, plaintiff testified that on June 9, 2014, at her request, defendant accompanied her to check a leak in her basement office. Plaintiff said defendant sexually assaulted her in the office then wiped himself with a paper towel, which she discarded in a trash can.

---

[3] Although it is undisputed that the Township filed an answer to plaintiff's complaint, the record on appeal only contains the answer and counterclaims filed by Vauss. Prior to trial, the court partially granted plaintiff's motion for summary judgment, dismissing defendant's remaining counterclaims.

A-0004-17T2

Plaintiff acknowledged she and defendant had a consensual sexual relationship for several months in 2005, claiming their relationship ended when defendant sexually assaulted her in the bathroom at work. Plaintiff did not report that incident. She remained friends with defendant.

Defendant testified at trial and denied engaging in any misconduct whatsoever. Rather, defendant claimed he and plaintiff mutually ended their 2005 consensual relationship. Like plaintiff, defendant acknowledged they "remained friends."

In support of his counterclaim, defendant said his reputation in the community was harmed following plaintiff's sexual assault allegations against him. For example, the Irvington Block Coalition, Inc., initiated a recall petition after plaintiff's accusations were made public. The petition annexed plaintiff's complaint and cited "[i]nappropriate consensual or nonconsensual sex acts perpetrated upon a Township employee within the Township of Irvington Municipal Building after business hours by Mayor/defendant." Additionally, in August 2016, the National Association for the Advancement of Colored People (NAACP) rescinded its award intended for defendant "[b]ecause of the sexual assault and rape allegations . . . in this case."

A-0004-17T2

Pertinent to this appeal, plaintiff's social worker, Joyce Lopez, testified during plaintiff's case-in-chief. In response to pointed questions by plaintiff's counsel, Lopez stated she did not find plaintiff to be delusional or psychotic, nor evasive or untruthful. According to Lopez's consultation notes, plaintiff disclosed "she has panic attacks and becomes depressed[,]" and "is taking Paxil, prescribed by her medical doctor, for anxiety." Lopez referred plaintiff to Dr. Gita Parikh, M.D., a psychiatrist, who treated plaintiff on one occasion.

Dr. Parikh testified on defendant's behalf. According to Dr. Parikh, plaintiff suffers from "major depression with psychosis." Additionally, defendant's damages expert, Jacob Jacoby, M.D., Ph.D., a neuropsychiatrist, testified that his diagnoses of plaintiff included psychosis, which he defined as "a loss of touch with reality"; and delusional disorder, which he defined as "a fixed false belief not shared by others, that is . . . a misinterpretation of events." Dr. Jacoby also opined that plaintiff suffers from somatoform disorder based on his observations that "a number of [her] aches and pains . . . seemed to be accentuated."

At the conclusion of the sixteen-day trial, during which numerous other witnesses testified, the jury rejected plaintiff's claims, unanimously finding she failed to prove defendant sexually assaulted her or made sexual comments

A-0004-17T2

toward her. Consequently, the jury did not reach the remaining questions, i.e., whether plaintiff suffered from quid pro quo sexual harassment or a hostile work environment. By a vote of five to one, the jury determined plaintiff defamed defendant "by way of oral statements[,]" and awarded him $7,000 in damages. This appeal followed.

On appeal, plaintiff argues the trial court erred by: permitting Dr. Jacoby to opine about her credibility contrary to our bright-line principle of exclusion, newly enunciated in Rodriguez v. Wal-Mart Stores, Inc., 449 N.J. Super. 577 (App. Div. 2017), aff'd in part, rev'd in part, ___ N.J. ___ (2019)[4]; excluding defendant's statement to Brown during settlement negotiations; and committing two other evidentiary errors, which cumulatively warrant a retrial. Plaintiff also claims the court should have dismissed defendant's counterclaim because he failed to establish actual damages and his claims are barred by the absolute litigation privilege.

II.

Most of plaintiff's arguments challenge the admission or exclusion of evidence. We therefore commence our review with our deferential standard of

---

[4] While the appeal was pending, the Court rendered its decision in Rodriguez. The Court's decision does not affect our analysis here.

A-0004-17T2

review. Specifically, "the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). "In light of the broad discretion afforded to trial judges, an appellate court evaluates a trial court's evidentiary determinations with substantial deference[,]" and affords them "[c]onsiderable latitude." State v. Cole, 229 N.J. 430, 449 (2017) (second alteration in original) (citation omitted). The trial court's determination will be affirmed "absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment." Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (citation omitted). Thus, "we will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'" Ibid. (citation omitted).

## A.

Initially, we address plaintiff's argument that Dr. Jacoby's diagnoses were "thinly veiled claims that [she] was incapable of telling the truth with regard to the precise subject matter of the trial" and, as such, he impermissibly opined about her credibility. To support her argument, plaintiff relies heavily on our decision in Rodriguez.

A-0004-17T2

It is well established that evidence of sensory or mental defects has unquestionable relevance in attacking the credibility of a witness. Velazquez v. City of Camden, 447 N.J. Super. 224, 243 (App. Div. 2016) (recognizing "evidence of a witness's mental state or condition is relevant to assess credibility and explain the witness's conduct"). Such evidence may be introduced either on cross-examination or through extrinsic evidence, State v. Johnson, 216 N.J. Super. 588, 603 (App. Div. 1987), and is admissible to demonstrate a witness's ability to perceive the facts was compromised at the time the events at issue occurred, and to demonstrate difficulties with recollection. See State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997) (holding a witness's severe psychiatric disorders, which compromised his abilities both to accurately perceive and to reliably recall, were admissible at trial); see also N.J.R.E. 607 (providing, in pertinent part, "any party including the party calling the witness may examine the witness and introduce extrinsic evidence relevant to the issue of credibility"). Extrinsic evidence is proof by others that contradicts or calls into question the witness's version of the facts. See Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 495 (1999).

Nonetheless, the introduction of a witness's mental condition is not without limitations. We recently "categorically disallowed" testimony of "an

expert witness who characterizes a plaintiff as a 'malingerer' or 'symptom magnifier,' or some other negative term impugning the plaintiff's believability" in the context of a civil jury trial. Rodriguez, 449 N.J. Super. at 596.

In Rodriguez, the plaintiff sued for personal injuries, following an accident in the defendant's store. Id. at 581. At trial, the defense presented expert testimony from a neurologist, who opined that the plaintiff's complaints of pain were consistent with "'somatization' . . . [defined as] 'a process where individuals describe experiencing symptoms of various types that are not accompanied by objective findings and interpretations.'" Id. at 584-85. The expert was not a psychologist or psychiatrist, and acknowledged "at the Rule 104 hearing that he would need to involve a mental health expert to confirm such a diagnosis." Id. at 584-85. However, the expert further opined that the plaintiff was "malingering" or "magnifying her symptoms." Id. at 585, 599

We concluded expert testimony classifying the plaintiff as a malingerer would "usurp or unduly influence, as a practical matter, a jury's paramount role in evaluating a plaintiff's credibility[,]" particularly since jurors "might too readily accept the expert's gross assessment at face value, despite their own critical independent role as the ultimate judges of witness credibility." Id. at 593-94. In doing so, we endorsed the principles set forth by the Eighth Circuit

in <u>Nichols v. American National Insurance Co.</u>, 154 F.3d 875 (8th Cir. 1998). <u>Id.</u> at 596.

Similar to plaintiff's claims here, the plaintiff in <u>Nichols</u> sued her former employer for, among other things, sexual harassment and sexual assault, claiming she suffered mental anguish, pain and suffering, and emotional distress. 154 F.3d at 878-80. The defense presented expert testimony from a psychiatrist, who diagnosed the plaintiff with a personality disorder and "undifferentiated somatoform disorder." <u>Id.</u> at 882. The expert also opined that the plaintiff had "poor psychiatric credibility"; "difficulty interpreting social settings"; "a tendency to blur fantasy with reality"; "recall bias"; and "malingering" for the purpose of "secondary" or "financial gain." <u>Ibid.</u>

Finding the expert's testimony exceeded her diagnosis of plaintiff's psychological state, the Eighth Circuit concluded the expert infringed on the "jury's task" of assessing plaintiff's credibility. <u>Id.</u> at 883. In essence, the expert's "thinly veiled comment on a witness'[s] credibility" caused the plaintiff in <u>Nichols</u> to suffer undue prejudice, particularly since credibility was of "critical importance." <u>Id.</u> at 884.

Here, we first observe plaintiff's mental conditions were highly relevant in assessing her credibility. <u>Velazquez</u>, 447 N.J. Super. at 243. Next, we

A-0004-17T2

distinguish Dr. Jacoby's testimony from the "malingering" or "symptom magnification" testimony we denounced in Rodriguez and the Eight Circuit rejected in Nichols. Specifically, Dr. Jacoby's testimony was limited to his diagnosis of plaintiff's psychiatric conditions, based on his objective findings.

For example, to support his delusional disorder diagnosis, Dr. Jacoby cited plaintiff's response to the pain questionnaire, which was inconsistent with his physical observations of her. See Rodriguez, 449 N.J. Super. at 597-98 (recognizing a qualified expert is not precluded from testifying, "without using pejorative classification labels such as 'malingering' and 'symptom magnification,' that a plaintiff's subjective complaints appear to be inconsistent with objective medical test results or findings").

Indeed, Dr. Jacoby's testimony stands in stark contrast to the defense expert in Nichols who testified the plaintiff had "poor psychiatric credibility"; "a tendency to blur fantasy with reality"; and her recollection of the events was affected by "malingering" and "secondary gain." 154 F.3d at 882. As the trial court in the present case aptly recognized, "Secondary gain certainly goes to the ultimate issue . . . and that [i]s clearly improper." The court also correctly determined Dr. Jacoby could testify that his diagnoses included psychosis and delusions, but he could not testify that "because she [has] . . . psychosis [the

jury] can[not] believe her in this particular case[;] that [i]s improper." In sum, although Dr. Jacoby diagnosed plaintiff with psychosis, somatic disorder, and delusional disorder, he did not testify that those diagnoses impacted plaintiff's credibility.

Nor do we find the prejudicial effect of Dr. Jacoby's testimony substantially outweighed its probative value, requiring its exclusion under N.J.R.E. 403. See also State v. Torres, 183 N.J. 554, 580 (2005). Notably, in Rodriguez, we held expert opinion testimony concerning malingering or symptom magnification is always unduly prejudicial pursuant to N.J.R.E. 403, but we did not generally foreclose a trial court's discretion to admit expert testimony concerning objective clinical diagnoses of a patient that does not morph into an impermissible credibility assessment. Here, the trial court's decision to admit Dr. Jacoby's testimony, limited to his medical diagnoses based on his testing and observations, accords with Rodriguez and was not unduly prejudicial. We therefore conclude the trial court's ruling was not "so wide off the mark that a manifest denial of justice resulted." Griffin, 225 N.J. at 413.[5]

---

[5] Moreover, by introducing the subject of her mental condition through the testimony of Lopez in her case-in-chief, plaintiff "opened the door" to her mental condition. See State v. James, 144 N.J. 538, 554 (1996). In particular, Lopez testified that plaintiff did not suffer from "any type of personality

B.

We next address plaintiff's contention that the court erred in excluding a statement made by defendant to Brown that plaintiff surreptitiously recorded during settlement negotiations in her attorney's office. In particular, defendant offered to financially compensate Brown, stating Brown "may be the victim in this scenario." Plaintiff maintains, as she did before the trial court, that statement implies a consensual-sex defense, thereby contradicting defendant's deposition and trial testimony. Accordingly, plaintiff claims the statement is "otherwise admissible" pursuant to N.J.R.E. 408[6] to impeach defendant's trial testimony. Plaintiff's argument is unavailing.

---

disorder"; did not suffer from "any mental illness"; did not have "psychotic thought patterns"; did not "suffer from any type of psychosis"; and did not have "perception reality split." Further, plaintiff's counsel elicited testimony from Lopez that she did not "ever find [plaintiff] to be evasive or determine[] that she was [not] telling [Lopez] the truth, in any way."

[6] N.J.R.E. 408 provides:

> When a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations, . . . including offers of compromise or any payment in settlement of a related claim, shall not be admissible to prove liability for, or invalidity of, or amount of the disputed claim. Such evidence shall not be excluded when offered for another purpose; and evidence otherwise admissible

13

If, as plaintiff argues, the statement constitutes defendant's "tacit acknowledgment" of sexual relations with her, the statement tends "to prove liability" for plaintiff's LAD claim for sexual harassment. N.J.R.E. 408. Accordingly, the trial court correctly excluded defendant's statement, recognizing it was made during "conversations [with] attorney[s] trying to resolve [the] matter[, therefore its admission] . . . would have a chilling effect on settlement negotiations which is one of the reasons why the . . . [R]ule[] exists." Additionally, because the statement was vague, and not a clear admission, the trial court also properly excluded it under N.J.R.E. 403.

## C.

We next turn to plaintiff's argument that the cumulative effect of the trial court's alleged errors warrants a retrial. "An appellate court may reverse a trial court's judgment if 'the cumulative effect of small errors [is] so great as to work prejudice[,]'" rendering the trial unfair. Torres v. Pabon, 225 N.J. 167, 190 (2016) (first alteration in original) (quoting Pellicer ex rel. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 53 (2009)).

---

shall not be excluded merely because it was disclosed during settlement negotiations.

In the present case, plaintiff contends the cumulative effect of two of the court's evidentiary errors warrants a new trial. For the first time on appeal, plaintiff contends the court erred in permitting Dr. Parikh's testimony diagnosing plaintiff as "psychotic." Plaintiff claims this testimony impermissibly bolstered Dr. Jacoby's opinion that plaintiff was delusional.

Secondly, plaintiff contends the trial court erred by admitting into evidence an entry, which she posted to her Facebook page four months before she testified at trial. In short, the post described plaintiff's encounter with a spirit. At trial, when questioned about the post, plaintiff confirmed she was "positive" the event happened. Specifically, a spirit "got in to bed with [her]."

Having considered these arguments in light of the record and controlling legal principles, we conclude they lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E). Instead, we note: (1) Dr. Parikh's testimony was based on her evaluation of plaintiff as a treating psychiatrist, and was not inconsistent with our holding in Rodriguez; and (2) the trial court properly determined the Facebook post impacted liability and damages because plaintiff's "mental state [was] at issue in this case." In sum, we discern no cumulative error rendering the trial unfair.

III.

A-0004-17T2

Finally, we view plaintiff's claim that the trial court erred in failing to dismiss defendant's defamation counterclaim under Rule 4:37-2 through the same lens as the trial court. See Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016). A motion made pursuant to Rule 4:37-2(b) "shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in [the non-movant's] favor." Accordingly, "The motion should only 'be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action.'" Millville Rescue Squad, 225 N.J. at 397 (citation omitted).

To establish a cause of action for defamation, a claimant must prove by clear and convincing evidence: (1) damages resulting from (2) the assertion of a false and defamatory statement concerning the claimant (3) made to third parties in a non-privileged situation, (4) with either (a) knowledge that those statements were false, (b) a reckless disregard for the truth or falsity of the statements, or (c) negligence in failing to ascertain the truth or falsity of the statements, depending on the private or public nature of the plaintiff and of the subject matter. G.D. v. Kenny, 205 N.J. 275, 292-93 (2011); DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004). "As a general rule, a statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in

16

the estimation of the community or to deter third persons from associating with him." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-65 (1999); accord W.J.A. v. D.A., 210 N.J. 229, 238 (2012). Further, it is well established that "[a] prime example" of a statement that is defamatory per se "is [a] false attribution of criminality." Romaine v. Kallinger, 109 N.J. 282, 291 (1988). Plaintiff's false statements about defendant clearly fell within this category.

Plaintiff argues, as she did before the trial court, that defendant's defamation claim was barred by the litigation privilege. In particular, plaintiff contends the genesis of the recall petition and rescission of the NAACP's award was the allegations of sexual harassment and sexual assault alleged in her complaint, which is "absolutely privileged." Plaintiff's argument is unavailing.

"Although defamatory, a statement will not be actionable if it is subject to an absolute or qualified privilege. A statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability." Erickson v. March & McLennan Co., 117 N.J. 539, 563 (1990) (citation omitted). "The absolute privilege applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the

litigation; and (4) that have some connection or logical relation to the action.'" Hawkins v. Harris, 141 N.J. 207, 216 (1995) (citation omitted).

Importantly, there exists an interrelationship between the third and fourth prongs. "Whether the statements were made to achieve the objects of the litigation depends on their relationship to the [action]." Id. at 218 (emphasis omitted). The purpose of the litigation privilege is "to encourage open channels of communication and the presentation of evidence in judicial proceedings." Id. at 216-17 (internal quotation marks and citation omitted).

Affording defendant the benefit of the evidence adduced at trial, "together with the legitimate inferences therefrom," a reasonable jury could conclude that plaintiff published her complaint "to other third parties." Here, those communications, which spurred the recall petition and rescission of the NACCP's award were not designed "to achieve the objects of the litigation" nor did they have "some connection or logical relation to the action." Id. at 216.

Moreover, plaintiff made numerous oral statements to several third parties shortly after the alleged June 9, 2014 sexual assault, prior to the filing of her complaint. For example, she told her co-workers that defendant touched her buttocks and breast, launching an internal investigation by the Township, and a criminal investigation by the Essex County Prosecutor's Office. As we have

18

long recognized, the litigation privilege "does not include a statement given to investigating police implicating another in criminal activity. Immunity does not extend to statements published outside of a judicial proceeding to persons not connected with it." Citizens State Bank of N.J. v. Libertelli, 215 N.J. Super. 190, 198 (App. Div.1987) (footnote omitted). Notably, plaintiff does not challenge defendant's claim that she authored and sent a defamatory letter to the Irvington Herald, which was authenticated by defendant's forensic expert. In sum, we agree with the trial court that the litigation privilege does not shield plaintiff's statements here.

Turning to plaintiff's contention that defendant failed to demonstrate actual damages, we first observe plaintiff did not specifically address that argument before the trial court. Before us, she claims the alleged defamatory statements surrounding the recall petition, the NAACP's rescission of its award, and the anonymous letter to the Irvington Herald did not cause defendant to suffer economic, physical, or reputational damages or extreme emotional distress. Rather, plaintiff emphasizes defendant's testimony that having "negative things" said about him was part of his political "business" and he "c[ould] handle it." Based on our review of the record, we conclude plaintiff's claim lacks merit.

A-0004-17T2

Where, as here, the matter concerns a public figure or public concern, the claimant must prove "actual damages." See Rocci v. Ecole Secondaire Macdonald-Cartier, 165 N.J. 149, 156-57 (2000). "Actual damages . . . refer[] to the real losses flowing from the defamatory statement[,]" and may either be deemed "special" or "general." W.J.A., 210 N.J. at 239; Nuwave Inv. Corp. v. Hyman Beck & Co., 221 N.J. 495, 499 (2015). Special damages "compensate a plaintiff for specific economic or pecuniary loss"; general damages, on the other hand, "address harm that is not capable of precise monetary calculation[,]" such as an "'impairment to reputation and standing in the community,' along with personal humiliation, mental anguish, and suffering to the extent that they flow from the reputational injury." Nuwave, 221 N.J. at 499 (quoting W.J.A., 210 N.J. at 239); see also Rocci, 165 N.J. at 155. A plaintiff relying on general damages "should offer some concrete proof that his reputation has been injured." Sisler v. Gannett Co., 104 N.J. 256, 281 (1986).

We are satisfied from our review of the record that defendant demonstrated a prima facie claim of actual damages, sufficient to support the trial court's denial of plaintiff's motion for involuntary dismissal pursuant to Rule 4:37-2. For example, defendant testified he expended "[t]ime, energy, [and] resources" in challenging the recall petition; was deprived of an award by

20

the NAACP; and "ha[d] to explain to [his] daughter how someone could say that [he] assaulted . . . or that [he] raped them [sic]." Based on this testimony, and all reasonable inferences that could be deduced therefrom, we are satisfied a rational jury could find defendant sustained general damages for "impairment to reputation and standing in the community," and "personal humiliation," which "flow[ed] from his reputational injury." Nuwave, 221 N.J. at 499.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21                                                                                    A-0004-17T2